UNITED STATES of America, Plaintiff,

v.

**Joan BRANELLA and Frank Branella, Defendants.**

No. 96–CV–3108.

United States District Court,
D. New Jersey.

Aug. 7, 1997.

---

Yvette D. Mouton, Asst. U.S. Atty., Newark, NJ, for Plaintiff.

Joan Branella, Frank Branella, Philadelphia, PA, Defendants Pro Se.

BROTMAN, District Judge.

This case arises under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601 *et seq.* (the "Fair Housing Act"), as amended by the Fair Housing Amendments Act of 1988, Pub.L. No. 100–430, 1988 U.S.C.C.A.N. (102 Stat. 1619) ("the FHAA"). The United States has brought this action on behalf of Ann Jackson, pursuant to 42 U.S.C. § 3612(*o*). Broadly stated, the United States alleges that the Defendants violated federal fair housing laws by discriminating against Ms. Jackson, a prospective tenant, on the basis of familial status. Defendants deny the allegations. Presently before the Court is Defendants' Motion for Summary Judgment.

## I.  BACKGROUND

On February 4, 1994, Ann Jackson met with defendant Joan Branella (hereinafter "Mrs. Branella") to view a one-bedroom apartment at 3209 Juniper Court in Mays Landing, New Jersey. The apartment, a unit within the Woodlands Condominium complex, is owned by Frank and Joan Branella, who sought to offer it for rent in February 1994. At the time of Jackson's appointment with Mrs. Branella, Jackson was five months pregnant. After viewing the apartment, Mrs Branella gave Jackson a lease application and advised her that the Woodlands Condominium Association ("the Association" or "the Woodlands") charged $30.00 to conduct a credit and criminal record investigation. Mrs. Branella also expressed concern regarding occupancy restrictions the Association imposed on the Woodlands units in light of Jackson's status; that is, since the prospective occupants of the one-bedroom condominium were two persons—a single adult and a child—Mrs. Branella advised Jackson that the Association's rules and regulations might prohibit the Branellas from renting the apartment to Jackson and her child.[1] On the next business day, Jackson called the Association's rental office to inquire about occupancy restrictions, if any, for the apartment at 3209 Juniper Court, and learned that the Association's rules permitted two people to occupy that unit.[2]

In late March 1994, Jackson filed a complaint with the United States Department of Housing and Urban Development pursuant to 42 U.S.C. § 3610(a).[3] The complaint alleged that the Branellas had discriminated unlawfully against Jackson and her son on the basis of familial status by refusing to rent to them the apartment at 3209 Juniper Court. After conducting an investigation and taking preliminary action pursuant to 42 U.S.C. § 3610, the Secretary of Housing and Urban Development ("HUD") charged the

---

1. It is unclear whether Mrs. Branella so advised Jackson at the time of the visit on February 4 or in the course of a telephone conversation on February 5, 1994. For purposes of this motion, that distinction is irrelevant. More significant for present purposes, the parties disagree strenuously as to the extent of Mrs. Branella's advice. That is, while Jackson contends that Mrs. Branella was absolutely certain that she could not rent to Jackson because of her familial status, Mrs. Branella states that she merely directed Jackson to inquire with the Association for a more definitive statement and that she was *un* certain whether the Association's rules would preclude the Branellas from renting the apartment to Jackson and her child.

2. The court notes that there is no record evidence that Jackson called the Association or that the Association's rules permitted two persons to occupy the Defendants' apartment. *See infra* sec. II.D.4; *see also infra* sec. II.C.1 (discussing problematic evidentiary issues).

3. In late May 1994, Jackson amended the complaint to add Frank Branella as a defendant.

defendants with engaging in discriminatory housing practices in violation of the Fair Housing Act and the FHAA. Thereafter, the defendants elected to have the claims asserted in the HUD charge decided in a federal civil action pursuant to 42 U.S.C. §§ 3612(a) and (o). The summary judgment motion presently before the court relates to that action.

## II. DISCUSSION

### A. The Summary Judgment Standard

The standard for granting summary judgment is a stringent one. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n. 2 (3d Cir. 1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. *Serbin*, 96 F.3d at 69 n. 2. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that a summary judgment motion must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.' " *Lawrence v. National Westminster Bank*, 98 F.3d 61, 65 (3d Cir.1996) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmoving party must "make a showing sufficient to establish the existence of [every]

*element essential to that party's case,* and on which that party will bear the burden of proof at trial." *Serbin*, 96 F.3d at 69 n. 2 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)) (emphasis added); *see also Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991) (declaring that non-movant may not "rest upon mere allegations, general denials, or ... vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### B. Fair Housing Laws

In 1968, Congress enacted the Fair Housing Act to prohibit housing discrimination based on race, color, religion, or national origin. Also known as Title VIII of the Civil Rights Act of 1968, the Fair Housing Act was amended in 1974 to prohibit discrimination based on gender. *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 n. 1, 115 S.Ct. 1776, 1779 n. 1, 131 L.Ed.2d 801 (1995). Nearly a decade and a half later, Congress passed the Fair Housing Amendments Act of 1988, extending fair housing coverage to prohibit "familial status" discrimination—that is, discrimination against parents and other custodians living with children under the age of eighteen. 42 U.S.C.A. § 3602(k) (West 1994).[1]

Congress expanded the Fair Housing Act to protect against familial status discrimination in light of an express concern for the plight of single-parent families, young families with children, and poor families. *United States v. Lepore*, 816 F.Supp. 1011, 1017 (M.D.Pa.1991) (quoting 134 Cong. Rec. H4611 (daily ed. June 22, 1988) (statement of Rep. Miller)); *see also Doe v. City of Butler*, 892 F.2d 315, 326 (3d Cir.1989) (Roth, J., dissenting) (citing H.R.Rep. No. 100–711, at 32 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2184). The 1988 amendment accorded families broad protection—essentially as much as racial minorities and other groups protected by Title VII. *Lepore*, 816 F.Supp.

---

4. The FHAA also expanded the coverage of Title VIII to prevent discrimination against individuals with handicaps. *See Arc of New Jersey, Inc. v.*

*New Jersey*, 950 F.Supp. 637, 642–43 (D.N.J. 1996).

at 1016. Specifically, the FHAA provides that it is unlawful to make a dwelling unavailable to any prospective buyer or renter because of the presence of minor children in the prospective household. 42 U.S.C.A. § 3604(a) (West 1994) ("Section 3604(a)"); [5] *see also id.* § 3602(k) (defining "familial status"). The protection expressly extends, *inter alia*, to pregnant persons. *Id.* Similarly, the statute prohibits discrimination against such persons in the terms, conditions, privileges of housing sale or rental, or in the provision of services or facilities. *Id.* § 3602(b) ("Section 3602(b)"). It also renders unlawful the making of any statement with respect to the sale or rental of a dwelling that indicates a discriminatory preference or limitation. *Id.* § 3604(c) ("Section 3604(c)").[6] Finally, the statute renders it illegal to represent to a prospective tenant because of that person's familial status that a dwelling is unavailable for rental when such dwelling is in fact so available. *Id.* § 3604(d) ("Section 3604(d)").

■ A plaintiff states a prima facie case under Title VIII, as amended by the FHAA, by showing either (1) intentional disparate treatment with regard to housing, or (2) disparate impact alone, without proof of discriminatory intent. *Arc of New Jersey,* 950 F.Supp. at 643 (citing *Doe,* 892 F.2d at 323). The government here argues that the Defendants, through willful actions in disregard for the rights of Jackson and her son, intentionally discriminated against a prospective tenant based on familial status, in contravention of Sections 3604(a), (b), (c), and (d). (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J.

[hereinafter "Opp'n"] at 6.) In the absence of any representation that Plaintiff seeks recovery based on the disparate impact theory, the court must conclude that only an intentional discrimination claim could lie in this case.

■ While the failure to show intent does not defeat an attempt to state a prima facie case of housing discrimination, *Resident Advisory Bd. v. Rizzo,* 564 F.2d 126, 146–48 & n. 31 (3d Cir.1977), where, as here, the plaintiff alleges discrimination as a result of disparate treatment—as opposed to disparate impact—a showing of impermissible intent is pivotal. *Mountain Side Mobile Estates Partnership v. Secretary of Hous. & Urban Dev.,* 56 F.3d 1243, 1250 & n. 6, 1252 (10th Cir.1995). To that end, a case of intentional discrimination requires the plaintiff to show, *inter alia,* that familial status was *a* motivating factor (though not necessarily the sole motivating factor) in the allegedly violative action. *See Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1042 (2d Cir.1979) (analogous race discrimination claim), *cited approvingly in Doe,* 892 F.2d at 323.

■ The plaintiff can show discriminatory intent by way of either direct or indirect evidence. *Kormoczy v. Secretary, United States Dep't of Hous. & Urban Dev.,* 53 F.3d 821, 823 (7th Cir.1995). In the absence of direct evidence of discriminatory intent, the court must apply burden-shifting standards set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) ("*Burdine* ").[7] *See NAACP v.*

5. 42 U.S.C. § 3604(a) provides that it shall be unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."

6. In specific, 42 U.S.C. § 3604(c) declares it unlawful

[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to

make any such preference, limitation, or discrimination.

7. Under *McDonnell Douglas–Burdine,* the plaintiff must set forth basic facts to establish a prima facie case: (1) the complainant is a member of a protected class; (2) she applied for and was qualified to rent the unit in question; (3) she was rejected; and (4) the unit remained available after she was rejected. *See Burdine,* 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6; *Chauhan v. M. Alfieri Co.,* 897 F.2d 123, 127 (3d Cir.1990) (Becker, J.). Sufficient evidence with respect to these factors raises a rebuttable presumption of discriminatory intent and shifts the burden to the defendant, who must articulate a legitimate non-discriminatory reason for rejecting the pro-

*Medical Center, Inc.,* 657 F.2d 1322, 1333 (3d Cir.1981); *see also Chauhan,* 897 F.2d at 126–27 (noting evidentiary difficulties in proving discriminatory intent; recognizing *McDonnell Douglas–Burdine* applies to Fair Housing Act claims). Conversely, where there exists direct evidence of intentional discrimination, a plaintiff need not establish a prima facie case pursuant to *McDonnell Douglas–Burdine. Lepore,* 816 F.Supp. at 1017. The evidence in the instant motion includes direct evidence of intentional discrimination. *See infra* section II.C. Thus, the court need not apply the *McDonnell Douglas–Burdine* factors.

■ Determining the existence of discriminatory intent, where the record reflects conflicting evidence, is within the province of the fact finder. *See Lepore,* 816 F.Supp. at 1017 (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 266, 97 S.Ct. 555, 563–64, 50 L.Ed.2d 450 (1977) and *Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 2048–49, 48 L.Ed.2d 597 (1976)). However, on a motion for summary judgment, if the non-moving party does not provide sufficient evidence to support each element of the prima facie case, the case does not withstand summary judgment and the fact finder need never address the factual question of intent. *See Serbin,* 96 F.3d at 69 n. 2 (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). The converse, of course, also holds true. That is, where the non-moving party provides sufficient evidence to preclude summary judgment, the fact finder assumes the duty of evaluating, *inter alia,* the evidence of discriminatory intent. With this backdrop, the court will consider in turn Plaintiff's evidence and the prima facie elements of the alleged fair housing violations.

### C. Plaintiffs Evidence

To support the claim that the Defendants intentionally discriminated against Jackson, the United States proffers three affidavits,[8] a copy of the Complaint and Jury Demand for this case, a transcript from a preliminary scheduling conference in this matter, and a deposition transcript. In addition, appended to one of the affidavits are, among other things, Plaintiff's Response to Defendant's [sic] Request for Admissions, Plaintiff's Response to Defendant's [sic] Request for Production of Documents, and Plaintiff's Response to Defendant's [sic] First Set of Interrogatories. In evaluating the sufficiency of Plaintiff's evidence for purposes of the summary judgment motion, however, the court will consider neither the information presented in the Certification of Ann Jackson nor the Certification of Yvette Mouton, because neither Certification conforms to the specific requirements of 28 U.S.C. § 1746 concerning admissibility and use of unsworn affidavits.[9]

#### 1. Improperly Submitted "Certifications"

■ 28 U.S.C. § 1746 provides, in relevant part, that whenever "any matter is required or permitted to be supported ... by sworn declaration, ... certificate, statement, oath, or affidavit, ... such matter may, with like force and effect, be supported ... by the unsworn declaration, certificate, ... or statement, ... *as true under penalty of perjury.* ..." 28 U.S.C.A. § 1746 (West 1994) (emphasis added). Moreover, the statute delineates the form an unsworn affidavit or certification must take, requiring that it state: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing matter is true and correct. Executed on (date). (Signa-

---

spective tenant. *Chauhan,* 897 F.2d at 127. Assuming the defendant proffers such a non-discriminatory reason for his actions, "the plaintiff seeking to defeat a summary judgement motion must produce some evidence, in addition to the basic facts necessary to establish the prima facie case, indicating that the defendant's reason is pretextual." *Id.* at 127–28.

8. Two of the three affidavits are each captioned "Certification." Notably, neither Certification

bears a notarial seal indicating that the statement was made under oath.

9. In addition, the court will not consider the allegations set forth in the Complaint and Jury Demand, as the pleadings do not help the non-moving party meet its burden on summary judgment. *See* Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

ture)". *Id.* Critical in the statutory prerequisite is the phrase "under penalty of perjury," as the purpose of 28 U.S.C. § 1746 is "to set the stage for a federal prosecution in the event of falsity." *In re Smolarski*, Nos. 88–611, 87–5523, 88–1047, 1988 WL 120652, at *2 (E.D.Pa. Nov.3, 1988). For purposes of the present motion, so long as an otherwise unsworn affidavit is filed under penalty of perjury, it satisfies the affidavit requirement of Fed.R.Civ.P. 56. *United States v. 225 Cartons, More or Less, of an Article or Drug,* 871 F.2d 409, 414 n. 4 (3d Cir.1989); *see also Noske v. Dicaterino Contracting, Inc.,* Civ. A. No. 92–4153, 1994 WL 386850 (D.N.J. Jul.19, 1994) (declaration under penalty of perjury suffices to comply with section 1746).

■ The Certifications of Ann Jackson and Yvette Mouton state the following: "I hereby certify that all of the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment." (Opp'n Ex. 1 at 3–4; Ex. 6 at 3.) While the statute permits substantial compliance with the prescribed form, *see* 28 U.S.C.A. § 1746, the proffered Certifications do not even meet this lesser standard. The failure to acknowledge the penalty of perjury prevents the court from considering the affidavits' contents for purposes of summary judgment. *Tukesbrey v. Midwest Transit, Inc.,* 822 F.Supp. 1192, 1198 (W.D.Pa.1993) (non-conforming, unsworn materials to be stricken); *see also Nissho–Iwai American Corp. v. Kline,* 845 F.2d 1300, 1305–06 (5th Cir.1988) (non-conforming, unsworn affidavits treated as "incompetent to raise a fact issue precluding summary judgment").

### 2. Belated Responses to Request for Admissions

Defendants argue that the court also should not consider Plaintiff's responses to Defendants' Request for Admissions because Plaintiff failed to provide timely answers to same. Defendants assert that the failure to respond in a timely fashion converted the statements in the Request for Admissions into party admissions against the plaintiff. *See* Fed.R.Civ.P. 36(b) ("Any matter admitted under [Rule 36] is conclusively established unless the court on motion permits withdrawal or amendment of the admission."); *see also infra* n. 11. For purposes of the present motion, defendants contend that the statements *qua* admissions must be considered undisputed.[10] *Cf. Airco Indus. Gases, Inc. v. Teamsters Health & Welfare Pension Fund,* 850 F.2d 1028, 1036 n. 9 (3d Cir.1988) (approving use of Rule 36 admission to grant summary judgment).

The United States concedes that it did not file its answers within thirty days after the request, but submits that the Defendants agreed to extend the time for the response.[11] In the alternative, the United States argues that the Defendants will suffer no prejudice from admitting the answers since same were forwarded to the Defendants "a mere two weeks after the initial due date." (Opp'n at 12.) The court need not determine whether the Defendants agreed to an extension—an assertion which Defendants deny vehemently—because even if the parties never agreed, the court construes Plaintiff's alternative argument as a request to withdraw the admis-

---

**10.** The pertinent statements in the Request for Admissions provide (1) "The Complainant was advised by Defendant, Joan Branella, to check with the Woodland Condominium Association management office staff concerning occupancy requirements for one (1) bedroom units since the said Defendant, Joan Branella, was unsure of the requirements." (Defs.' Mem. of Law, Ex. E at 2, ¶ III.3); (2) "Had the Complainant contacted either Defendant concerning the information obtained from the condominium office staff about the unit's occupancy, the Defendants would have leased the unit to the Complainant provided that her credit report was favorable." (*Id.* Ex. 2, ¶ III.7); and (3) "At no time did either Defendant engage in any form of discrimination against the

Complainant with regard to the rental of the premises." (*Id.* Ex. 2, ¶ III.8).

**11.** Fed.R.Civ.P. 36(a) provides, in pertinent part,

The matter [of which an admission is requested] is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney.

sions pursuant to Fed.R.Civ.P. 36(b).[12]

■ Courts have great discretion in deciding whether to withdraw or amend an admission. *United States v. Stelmokas*, Civ. A. No. 92–3440, 1995 WL 464264, at *4 (E.D.Pa. Aug.2, 1995), *aff'd*, 100 F.3d 302 (3d Cir.1996). Under Fed.R.Civ.P. 36(b) and case law in this Circuit, the party contesting amendment or withdrawal of the admission must demonstrate that prejudice will result from the amendment or withdrawal. *Gerlach v. Volvo Cars of North America*, No. 96–CV–1476, 1997 WL 129004, at *7 (E.D.Pa. March 17, 1997). The court must also consider whether amendment or withdrawal of the admission will subserve the presentation of the merits of the case. *Id.* That is, where possible, an action should be resolved on its merits. *Cf. Kosta v. Connolly*, 709 F.Supp. 592, 594 (E.D.Pa.1989) (cautioning against employing Rule 36(a) to establish facts obviously in dispute).[13]

■ To satisfy their burden of showing prejudice, Defendants cite a then-looming discovery deadline as well as Plaintiff's failure to request in a timely manner additional days to respond to the Request for Admissions. They then state generally that "any relief from the matters concluded by [the disputed] admissions results in tremendous prejudice to Defendants." (Defs.' Reply Mem. at 6.)

Where a party would be precluded from discovery as a result of the withdrawal or amendment of previously admitted statements on the eve of trial, that party would suffer prejudice if she had relied on the admissions in preparing for trial. *See Coca-Cola*, 123 F.R.D. at 107. That is not the case here. The United States notes correctly that the delay involved in the instant case spans a mere two weeks. Reliance upon the purported admissions could have been reasonable for those two weeks alone; thereafter, reliance

would necessarily be unreasonable. Furthermore, the Defendants clearly did not rely on the admissions in preparing for trial: the Final Pre–Trial Order lists the substance of the disputed admissions as "Contested Facts." (Final Pre–Trial Order at 7.) The Final Pre–Trial Order also reflects that Defendants intend to call witnesses who will testify to the content of the admissions. (*Id.* at 15.) Thus, the court finds that Defendants will suffer no prejudice from considering Plaintiff's belated answers to the Request for Admissions. *Cf. NCR Corp. v. J–Cos Sys. Corp.*, Civ. A. No. 87–1520, 1987 WL 13683, at *1 (E.D.Pa. July 13, 1987) (thirteen-day delay in answering Request for Admission not cause prejudicial loss of time in course of litigation). Moreover, the court finds that considering Plaintiff's answers will facilitate a fair presentation the merits of this case, whether for the limited purpose of the present summary judgment motion or for purposes of trial.

### D. Summary Judgment Analysis

Having made preliminary findings with regard to the evidence the government proffers in response to Defendants' summary judgment motion, the court now examines whether that evidence is sufficient to withstand Defendants' motion. That is, do Plaintiff's answers to Defendants' interrogatories and Plaintiff's responses to Defendants' Request for Admissions "make a showing sufficient to establish the existence of [every] element essential to [its *prima facie*] case, and on which that party will bear the burden of proof at trial"? *Serbin*, 96 F.3d at 69 n. 2 (citation omitted). In light of the separate and distinct fair housing violations alleged in the Complaint, the answer to that question varies. With respect to the alleged violations of Sections 3604(a), (b), and (c), the court finds that Plaintiff's evidence is sufficient to

---

**12.** The court notes that the Defendants were aware of Plaintiff's desire to have the court consider the belated answers to the Request for Admissions as early as October 17, 1996, well before the present motion was filed. (*See* Defs.' Reply Mem. at 5; *id.* Ex. B at 2.)

**13.** The court acknowledges the dual goals of Rule 36(b) simultaneously to emphasize the im-

portance of resolving an action on the merits and to uphold a party's justified reliance on an admission in preparation for trial. *See Coca–Cola Bottling Co. v. Coca–Cola Co.*, 123 F.R.D. 97, 103 (D.Del.1988). In considering the potential prejudice resulting from the proposed withdrawal or amendment of the admissions, however, the court serves the latter goal.

withstand Defendants' motion. The evidence does not, however, suffice to maintain the alleged violation of Section 3604(d).

### 1. Section 3604(a)

Section 3604(a) of the fair housing statute provides that it is unlawful "[t]o refuse to . . . rent after the making of a bona fide offer, *or* to refuse to negotiate for the . . . rental of, *or* otherwise make unavailable or deny, a dwelling to any person because of . . . familial status. . . ." 28 U.S.C. § 3604(a) (emphasis added). As the statute clearly states, a prima facie case alleging a violation of Section 3604(a) is satisfied by evidence showing *any one* of the violative actions set forth. Moreover, the court notes that Section 3604(a)'s broadly drafted prohibition reflects Congress's intent to "reach every private and public practice that makes housing more difficult to obtain on prohibited grounds." *United States v. Housing Auth.*, 504 F.Supp. 716, 726 (S.D.Ala.1980) (citations omitted); *see also Fair Hous. Council v. Eastern Bergen County Multiple Listing Serv.*, 422 F.Supp. 1071, 1075 (D.N.J.1976) (noting broad construction of Congressional mandate set forth in Section 3604(a)); *Arc of New Jersey*, 950 F.Supp. at 642 (citations omitted) (noting "broad and inclusive compass" of Title VIII).

■ Plaintiff's evidence shows that on the day after Ann Jackson viewed the apartment at issue, Jackson and Mrs. Branella had a telephone conversation during which Branella stated "that the Woodland Association had rules and regulations which would not permit her to rent the apartment to Ms. Jackson," and that she was "absolutely sure that she could not rent to her [in light of these rules] because of her familial status." (Pl.'s Response to Def's First Set of Interrog's at 3, ¶¶ 4–5.) The court finds that this evidence suffices to allow a reasonable jury to evaluate whether Mrs. Branella's actions violated one or more provisions of Section 3604(a).

### 2. Section 3604(b)

Similarly, where the evidence shows that terms, conditions, or privileges of the rental of a dwelling discriminate against a person because of that person's familial status, such evidence is sufficient to withstand a motion for summary judgment with respect to a housing discrimination claim under Section 3604(b). Plaintiff's evidence gives rise to a genuine issue of material fact sufficient to allow a reasonable jury to evaluate the alleged violation of section 3604(b).

### 3. Section 3604(c)

While Section 3604(c) commonly governs instances of commercial advertisement, *see, e.g., Soules v. United States Dep't of Hous. & Urban Dev.*, 967 F.2d 817 (2d Cir.1992), the words of the statute sweep more broadly. To that end, Section 3604(c) renders unlawful the making of any statement with respect to the rental of a dwelling that indicates either any preference, limitation or discrimination based on familial status or any intention to make any such preference or limitation. *See* 42 U.S.C. § 3604(c); *see also Stewart v. Furton*, 774 F.2d 706 (6th Cir.1985) (discriminatory oral statement violates Section 3604(c)). Once again, Plaintiff's evidence shows that Mrs. Branella made such a statement. As such, and in light of Defendants' submitted evidence to the contrary, a genuine issue of material fact sufficient to preclude summary judgment exists.

### 4. Section 3604(d)

■ Finally, Section 3604(d) creates an enforceable right to truthful information concerning the availability of housing and prohibits discriminatory, false representations. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74, 102 S.Ct. 1114, 1121–22, 71 L.Ed.2d 214 (1982). The fair housing statute thus sets forth that a person may not represent to a prospective tenant, for reasons of that prospective tenant's familial status, that a dwelling is unavailable for rental when the dwelling is in fact available. *See* 42 U.S.C.A. § 3604(d). Tracking the language of the statute—in the absence of significant guidance from case law construing Section 3604(d)—a prima facie claim of housing discrimination under Section 3604(d) requires (at a minimum) evidence showing that (1) the defendants made a representation that a dwelling is unavailable; (2) the dwelling is, in

fact, available. *See id.*[14] Thus, the evidence should establish that the defendant made a misrepresentation.

Plaintiff's answers to Defendants' interrogatories and Plaintiff's responses to Defendants' Request for Admissions show merely that Defendant Joan Branella made a representation that the apartment in question was unavailable to Jackson because of Jackson's familial status. The evidence fails to establish the falsity of that representation or that the unit was, indeed, available to Jackson as a prospective tenant. As a result, the housing discrimination claim pursuant to Section 3604(d) fails as a matter of law and cannot withstand Defendants' present motion.

As a final note, Defendants contend in error that the failure to make factual allegations against Frank Branella in conjunction with the alleged fair housing discrimination violations precludes any liability on his part. (Defs.' Mem. of Law at 2 & n. 1.) The evidence before the court, however, shows that Frank Branella is Joan Branella's spouse and co-owner of the apartment at issue. At least three courts have determined that both spouses are liable when one spouse engages in discriminatory conduct while renting jointly owned property. *Cato v. Jilek,* 779 F.Supp. 937, 946 (N.D.Ill.1991) (citing *Izard v. Arndt,* 483 F.Supp. 261, 263 (E.D.Wis. 1980)); *cf. Michigan Protection & Advocacy Serv., Inc. v. Babin,* 799 F.Supp. 695, 716 (E.D.Mich.1992) (discriminatory action by *un* related persons not actionable under fair housing laws), *aff'd,* 18 F.3d 337 (6th Cir. 1994). This is consistent with the spirit of the Fair Housing Act and the FHAA, which places on all owners of rental property the responsibility for ensuring that the property complies with fair housing laws. *United States v. Reece,* 457 F.Supp. 43, 46 n. 7 (D.Mont.1978).

## III. CONCLUSION

For the reasons set forth, the United States has not proffered sufficient evidence to withstand Defendants' motion for summary judgment with respect to the housing discrimination claim under 42 U.S.C.A. § 3604(d). As a result, this claim fails as a matter of law. The alleged violations of Sections 3604(a), (b), and (c), however, remain viable in light of sufficient evidence produced by the United States to establish the essential elements of its claims, including, where applicable, intent to discriminate. *See Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) ("finding of intent or no intent in a discrimination suit is a finding of fact").

The court will enter an appropriate order.

## ORDER

THIS MATTER having come before the court on Defendants' Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56;

The court having reviewed the record and the submissions of the parties;

For the reasons set forth in the court's opinion of this date;

IT IS this 6th day of August, 1997 HEREBY

**ORDERED** that Defendants' motion is **DENIED** with respect to Plaintiff's claims under 42 U.S.C. §§ 3604(a), (b), and (c); AND IT IS FURTHER

**ORDERED** that Defendants' motion is **GRANTED** with respect to Plaintiff's claim under 42 U.S.C. § 3604(d).

No costs

---

**14.** The United States District Court for the Eastern District of Michigan has articulated a similar test for establishing a prima facie claim under Section 3604(d). *See Darby v. Heather Ridge,* 806 F.Supp. 170, 175–76 (E.D.Mich.1992).